IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RITA P. SACKETT | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 1:05CV0160 |
| | § | |
| ALBERTO GONZALES, Attorney General of | § | |
| the United States. | § | JUDGE RON CLARK |
| | § | |
|     *Defendant*. | § | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the court is Defendant's Motion for Summary Judgment [Doc. #17]. Plaintiff Rita Sackett alleges she was discriminated against on the basis of her race, gender, and age. Plaintiff also alleges the Defendant retaliated against her and subjected her to a hostile work environment.

Defendant has moved for summary judgment. Plaintiff responded with the administrative record of the EEOC hearing and decision on appeal. Plaintiff has failed to meet her burden of production. Summary judgment is proper as to all of Plaintiff's claims.

### I. Background

In 1994, Plaintiff Rita Sackett began working for the Bureau of Prisons ("BOP") as a GS-7 corrections officer at the Federal Corrections Institution ("FCI") in Bastrop, Texas. In 1997, Plaintiff was simultaneously promoted to a GS-9 Case Manager and transferred to the United States Penitentiary ("USP") in Beaumont, Texas. In 1998, Plaintiff was promoted to GS-11 Case Manager and is currently employed in this position.

1

Plaintiff, as a federal employee of the BOP, is given standard annual performance evaluations. The annual performance evaluation consists of the employee's supervisor giving a rating for overall performance and a rating for each of five separate elements of review. The only element discussed in relation to Plaintiff is "communication skill." The record is unclear as to how the ratings are ranked. However, it appears that an "exceeds" rating is higher than a "fully satisfactory" rating.

During the April 1, 1999 to April 1, 2000 period, Plaintiff received an overall performance rating of "exceeds," with a rating of "fully satisfactory" in communication skills. During the April 1, 2000 to March 31, 2001 period, Plaintiff received an overall performance rating of "exceeds," with a rating of "exceeds" in communication skills. In February of 2001, when the Plaintiff claims the first of three acts of discrimination against her took place, the results of her 2000-2001 annual evaluation were not yet available to her superiors.

Plaintiff applied for a transfer to positions at USP-Atwater in California, USP-Lee in Virginia and USP-Coleman in Florida. All positions applied for were GS-11 Case Manager positions. As part of the standard BOP employee transfer process, a staff member at the facility to which an employee seeks a transfer contacts the potential transferee's superiors by telephone and requests a reference check or "voucher." The superior evaluates the potential transferee in six categories: administrative skills, oral communication skills, written communication skills, technical expertise, responsiveness and analytical ability. The ratings available are "above average," "average," "below average," and "not observed."

On February 20, of 2001, Associate Warden Al Haynes ("Haynes"), an African American, evaluated the Plaintiff's work performance as a part of the vouchering process regarding Plaintiff's potential transfer to USP-Atwater. He rated her "above average" in all areas except oral

communication skill, where he rated her "average." In June of 2001, Haynes again completed a voucher for Plaintiff's potential transfer to USP-Lee. He rated her "above average" in administrative skills and technical expertise, "average" in written communication skills and analytical ability, and "below average" in oral communication skills and responsiveness. Jan Hanks ("Hanks"), a caucasian, was a GS-11 Case Manager and Acting Unit Manager of the Plaintiff at the time a voucher was requested for Plaintiff's requested transfer to USP-Coleman. Hanks rated Plaintiff "above average" in all areas, except for oral communication skills, where she rated her "average." Plaintiff did not receive a transfer to any of the three USPs.

Plaintiff claimed that inaccurate and negative responses were given to telephone calls for reference checks or vouchers from the staffs at USP-Atwater, USP-Lee and USP-Coleman. Plaintiff contends that inaccurate and negative responses were given because the Plaintiff is a white female over 40 years of age. Ultimately, Plaintiff claims the vouchers prevented her from obtaining a transfer out of USP-Beaumont. Plaintiff filed a formal EEO claim of discrimination based on sex, gender and age. The Administrative Judge found no discrimination.

Plaintiff filed the present case, claiming: (1) she was discriminated against because she was denied promotions and/or lateral transfers; (2) this discrimination was based on race, gender and age; (3) she was subjected to a hostile work environment; (4) she was retaliated against for filing a 2004 EEOC complaint; (5) she was treated in a disparate manner. The claims were filed under 42 U.S.C. §§ 1981, 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII"), and the Age Discrimination in Employment Act of 1972, 29 U.S.C. § 630(f) ("ADEA"). Defendant has filed a motion for summary judgment as to all of Plaintiff's claims. Plaintiff filed a motion to extend discovery on the date her response was due. That motion was denied [Doc. #23].

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689 (1993), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986)).

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more

persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Analysis

### A. Failure to Exhaust Administrative Remedies

Defendant asserts that Plaintiff's retaliation and hostile workplace claims are barred by her failure to exhaust administrative remedies. If a plaintiff's claim exceed the scope of the original EEOC complaint, it should be dismissed for failure to exhaust administrative remedies. *See Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000). Plaintiff contends that the decisions of the EEOC on her original complaint and her subsequent appeal satisfy her exhaustion requirement. This is correct as to claims properly complained of in her EEO complaint. However, claims of retaliation and hostile workplace were not mentioned in Plaintiff's original EEO complaint nor were they mentioned during her EEO testimony. Since these claims were not raised at the administrative level, they are dismissed. Plaintiff's remaining claims have been exhausted.[1]

---

[1] To the extent that Plaintiff claims disparate treatment as a separate cause of action, she is incorrect. However, evidence of disparate treatment might be used to support her discrimination claims.

**B. Race, Gender and Age Discrimination under § 1981, 1983 and Title VII and ADEA.**

    <u>1. Controlling Federal Law</u>

Plaintiff claims she was discriminated against in violation of 42 U.S.C. §§ 1981, 1983, Title VII and ADEA. Title VII is the "exclusive, pre-emptive administrative and judicial scheme" for redressing race and sex based claims of federal employment discrimination. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829, 96 S. Ct. 1961, 1966 (1976). Plaintiff is a federal employee of the BOP, and Title VII pre-empts any racial or sex based employment discrimination claim she makes on the basis of 42 U.S.C. §§ 1981, 1983. *See id.* Federal employees may make employment discrimination claims based on age under the ADEA. *Stevens v. Dep't. of Treasury*, 500 U.S. 1, 6, 111 S. Ct. 1562, 1566 (1991).

    <u>2. Appropriate framework for claim analysis</u>

Plaintiff offers no direct evidence of discrimination. In order to assess a discrimination claim based on circumstantial evidence under Title VII, the court turns to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105 (2000) (using *McDonnell Douglas* framework for the ADEA).

Under this scheme, Plaintiff must first prove a *prima facie* case of discrimination by showing: (1) she belongs to a protected class; (2) she is qualified for the position sought; (3) she suffered an adverse employment action by not receiving the transfer she sought; and (4) similarly situated non-class members were treated more favorably. *McDonnell Douglas Corp.*, 411 U.S. 792, 802-05 (1973).

If Plaintiff establishes a *prima facie* case for her claim, the second step of *McDonnell Douglas* shifts the burden to the BOP to establish a legitimate non-discriminatory reason for giving Plaintiff a lower rating for communications skills on vouchers to USP-Atwater, USP-Lee and USP-Coleman than she received on her annual performance evaluations. *See Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). If Defendant produces a legitimate non-discriminatory reason for the ratings given for the vouchers, the mandatory inference of discrimination disappears. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11, 113 S. Ct. 2742 (1993).

Finally, Plaintiff is given the opportunity to demonstrate that Defendant's non-discriminatory reason is a pretext for intentional discrimination. Plaintiff may establish pretext by showing that the employer's proffered explanation is false or unworthy of credence. *Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir. 2003). An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *Id.*

Plaintiff may also show pretext by comparing and contrasting her qualifications to those of the person actually hired. *See Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002). Ultimately, the Plaintiff must be a victim of intentional discrimination and must present evidence that a reasonable fact finder could infer intentional discrimination. *Reeves*, at 530 U.S. at 153, 120 S. Ct. at 2111.

  a. *Prima Facie* Case

Plaintiff sought transfer to USP-Atwater, USP-Lee or USP-Coleman in 2001. "To establish a *prima facie* case, a plaintiff need only make a very minimal showing [of discrimination.]" *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). To do so, Plaintiff must first establish that she is a member of a protected class. Plaintiff claims to be a member of three protected classes

because she is a female, a caucasian, and a federal employee older than 40 years of age. 42 U.S.C. § 2000e *et seq*. In cases of reverse racial discrimination claims, caucasian Americans receive the same protections under Title VII as non-caucasians. *McDonald v. Santa Fe Trail Transp. Co.* 427 U.S. 273, 281, 96 S. Ct. 2574 (1976). Defendant does not contest Plaintiff's race, gender or age. The court finds that Plaintiff has established that she is a member of three protected classes.

The next issue is whether Plaintiff was qualified for the positions for which she applied. All the positions sought by Plaintiff were GS-11 Case Manager positions. Plaintiff was already a GS-11 Case Manager. The voucher forms indicated that Plaintiff had no known disciplinary actions within the last two years. In addition, Haynes stated that he would employ Plaintiff for the position she sought. The court finds that the Plaintiff was qualified for the positions for which she applied.

The third issue is whether Plaintiff suffered an adverse employment action. In the context of claims brought under the anti-discrimination statute, adverse employment actions refer to "ultimate employment decisions," which include "hiring, granting leave, discharging, promotion and compensation." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997). Recently, the Supreme Court held that the anti-retaliation statute applied to an action which may not be considered "ultimate," but which resulted in the employee being assigned to a more physically demanding task. *See Burlington Northern and Santa Fe Ry. Co. v. White*, --- S. Ct. ----, 2006 WL 1698953 * 10 (June 22, 2006). But Plaintiff's live claims are not under this statute, and in any case, there is no evidence that working at the Beaumont facility is, or is generally regarded as, more onerous or less desirable, than employment in the same position at the facilities to which she wishes to be assigned.

Decisions by an employer that are only tangentially related to an ultimate employment decision are not adverse employment actions. *Mattern*, 104 F.3d at 707. Lateral transfers, or

transfers that do not involve promotion or demotion or change in work responsibilities, have not been considered adverse employment actions. *See Burger v. Central Apartment Management*, 168 F.3d 875,879 (5th Cir. 1999). In *Burger*, an apartment complex supervisor was denied a transfer to a similar position at another apartment complex owned by his employer. The court found that the transfer sought was lateral and its denial was not an adverse employment action. *Id.*; s*ee Weber v. Hurtgen*, 297 F. Supp. 2d 58, 65-66 (D.D.C. 2003) (applying the same principle to federal employment claims).

Plaintiff admits in her EEO testimony that she considered the transfer at least to USP-Lee a lateral transfer and not a promotion. In fact, at no time during her EEO hearing or appeal did Plaintiff refer to the positions at USP-Atwater, USP-Lee and USP-Coleman as promotions, or as otherwise more desirable. In addition, Defendant has put forth evidence that even if Plaintiff had secured any of the transfers which she sought, her GS-level, compensation, benefits and general job duties would have all remained the same as her current position. Plaintiff has offered nothing to rebut this. The court concludes that Plaintiff has failed to meet her burden of production on the issue of adverse employment action.

Assuming Plaintiff had met the requirements for the first three prongs of the *McDonnell Douglas* test, the remaining prong, showing a similarly situated non-class person was possibly treated more favorably, has not been met. Plaintiff contends that Haynes was instrumental in securing a lateral transfer for Derek McWilliams, an African American male Case Manager of age 35 from USP-Beaumont to a correctional facility in Houston, Texas. Plaintiff presented no testimony or documentation that she applied for the Houston Case Manager position. She offers no evidence of Mr.McWilliams's evaluations scores for his annual performance reviews nor for any vouchers that

transfers that do not involve promotion or demotion or change in work responsibilities, have not been considered adverse employment actions. *See Burger v. Central Apartment Management*, 168 F.3d 875,879 (5th Cir. 1999). In *Burger*, an apartment complex supervisor was denied a transfer to a similar position at another apartment complex owned by his employer. The court found that the transfer sought was lateral and its denial was not an adverse employment action. *Id.*; s*ee Weber v. Hurtgen*, 297 F. Supp. 2d 58, 65-66 (D.D.C. 2003) (applying the same principle to federal employment claims).

Plaintiff admits in her EEO testimony that she considered the transfer at least to USP-Lee a lateral transfer and not a promotion. In fact, at no time during her EEO hearing or appeal did Plaintiff refer to the positions at USP-Atwater, USP-Lee and USP-Coleman as promotions, or as otherwise more desirable. In addition, Defendant has put forth evidence that even if Plaintiff had secured any of the transfers which she sought, her GS-level, compensation, benefits and general job duties would have all remained the same as her current position. Plaintiff has offered nothing to rebut this. The court concludes that Plaintiff has failed to meet her burden of production on the issue of adverse employment action.

Assuming Plaintiff had met the requirements for the first three prongs of the *McDonnell Douglas* test, the remaining prong, showing a similarly situated non-class person was possibly treated more favorably, has not been met. Plaintiff contends that Haynes was instrumental in securing a lateral transfer for Derek McWilliams, an African American male Case Manager of age 35 from USP-Beaumont to a correctional facility in Houston, Texas. Plaintiff presented no testimony or documentation that she applied for the Houston Case Manager position. She offers no evidence of Mr.McWilliams's evaluations scores for his annual performance reviews nor for any vouchers that

were completed to facilitate his transfer. Finally, she elicits no testimony from McWilliams at any stage of her EEO hearing. The testimony surrounding McWilliams does not establish that he was similarly situated and treated more favorably than Plaintiff.

Plaintiff's EEO hearing testimony states that a man named Jim Van Cleave received the case manager transfer to USP-Lee that Plaintiff sought. There is no evidence of the race or age of Mr. Van Cleave. Haynes testified that Van Cleave received "below average" voucher ratings for written communication skills, technical expertise and responsiveness, and yet still received the transfer. Plaintiff repeatedly denied any personal knowledge of these facts. As for the other two transfers, there is simply no evidence suggesting a similarly situated person who was not a member of a protected class was treated more favorably. The court finds that Plaintiff failed to meet her burden of production on this prong.

Plaintiff is a member of three protected classes and was qualified for the positions she sought. However, the court finds no adverse employment action occurred because the transfers sought were lateral transfers. Even if an adverse employment action existed, Plaintiff has failed to produce evidence that a similarly situated person was treated more favorably. Accordingly, Plaintiff fails to make a *prima facie* case on the basis of race, gender or age.

### b. Legitimate, non-discriminatory reasons

Even if the court found that the Plaintiff made a *prima facie* case of racial, gender or age discrimination, the Defendant gave legitimate, non-discriminatory reasons for evaluating the Plaintiff in the manner they did. The evidence shows that Haynes and Hanks gave the Plaintiff lower oral communication skill ratings for her "voucher" reference checks than the ratings in her standard performance evaluations.

In her testimony during the EEOC proceedings, Hanks states that while she was Acting Unit Manager she gave honest evaluations of the Plaintiff's work performance during the voucher process. Haynes testified that the reason for the difference in his voucher evaluation of the Plaintiff from her annual performance evaluations were 1) numerous complaints from staff and inmates about Plaintiff's ability to communicate, 2) deficiencies in Plaintiff's work performance uncovered in a Central Office review of case management completed after Plaintiff's last standard review but before any transfer "voucher" requests, and; 3) Plaintiff's unresponsiveness during the Central Office review of her case backlogs. The court finds these are legitimate, non-discriminatory reasons for giving the Plaintiff the evaluations she received on her voucher evaluations.

### c. Pretext Arguments

Plaintiff fails to present any evidence that the legitimate, non-discriminatory reasons Haynes and/or Hanks gave were false or unworthy of credence, and thus not the real reason for the adverse employment action. *Laxton v. Gap, Inc.*, 333. F.3d 572, 578 (5th Cir. 2003). Plaintiff alleges that Haynes has relationships with male colleagues that he does not have with females and this reflects the his animus against women. Plaintiff also alleges that other white females have been discriminated against by Haynes. In addition, Plaintiff contends that Hanks was not qualified to work at USP-Beaumont and yet gave her a voucher evaluation. However, an employee's own belief and conclusory statements are not sufficient to show pretext. *Septimus*, 399 F.3d at 610. Plaintiff has offered no other evidence, by the way of documents or witness testimony, to support her opinions regarding Haynes and Hanks.

Further, Plaintiff does not attempt to show pretext by comparing or contrasting her qualifications to the person actually hired. *See Julian*, 314 F.3d at 728. To do so, Plaintiff would

11

have to show she was clearly better qualified for the position than the person who was actually transferred. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th Cir. 2003). Plaintiff fails to provide the identity or qualifications of the employees who received transfers to USP-Atwater and USP-Coleman and, as stated above, denies knowledge about the USP-Lee transferee. The court finds that Plaintiff has failed to meet her burden of production on pretext.

### IV. Conclusion

Plaintiff failed to properly exhaust her administrative remedies as to retaliation and hostile workplace. Plaintiff complains that Defendant's actions in failing to facilitate her transfer from USP-Beaumont to another USP were discriminatory. The evidence before the court shows that Plaintiff did not suffer an adverse employment action. In addition, Plaintiff has failed to produce evidence that a similarly situated non-class person was treated more favorably than her. Finally, Plaintiff has not cast doubt on Defendant's proffered legitimate non-discriminatory reasons.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment **[Doc. # 17]** is **GRANTED**.

So **ORDERED** and **SIGNED** this **28** day of **June, 2006.**

_____
Ron Clark, United States District Judge